IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. MANSFIELD, JR., MICHAEL W. BALLARD, JERRY H. GALLUD, MICHAEL GLAWE, DENNIS HOLMAN, RICHARD E. MILLER, JR., and PAUL W. WHITEFORD, JR., Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) ) ) | No. 06 C 6869 |
| Plaintiffs, ) | |
| vs. ) | |
| AIR LINE PILOTS ASSOCIATION INTERNATIONAL, ) ) ) | |
| Defendant. ) | |
| UNITED AIRLINES, INC., ) | |
| Intervenor. ) | |
| BRUCE HUDSON, RAYMOND CHOP, ERIC PASSANNANTE, ) ) ) | |
| Plaintiffs, ) | No. 07 C 590 |
| vs. ) | |
| AIR LINE PILOTS ASSOCIATION INTERNATIONAL and AIR LINE PILOTS ASSOCIATION UNITED AIRLINES MASTER EXECUTIVE COUNCIL, ) ) ) ) | |
| Defendants. ) | |
| UNITED AIRLINES, INC. ) | |
| Intervenor. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs in these consolidated cases are pilots currently or formerly employed by United Airlines Inc. who contend, on behalf of themselves and two putative classes, that their union, the Air Line Pilots Association (ALPA), breached its duty of fair representation by the manner in which it distributed the proceeds of $550 million in convertible notes it received as part of United's bankruptcy. The Court granted United leave to intervene in both cases. United has moved to dismiss the *Hudson* claims, and the *Hudson* and *Mansfield* plaintiffs have each moved to certify a class. For the foregoing reasons, the Court denies United's motion to dismiss and grants plaintiffs' motions for class certification.

**Facts**

On December 9, 2002, United and its related corporations filed a voluntary petition to reorganize pursuant to Chapter 11 of the United States Bankruptcy Code. As part of its restructuring, United entered into negotiations with each of its unions to renegotiate its collective bargaining agreements in an effort to cut its costs. On January 1, 2005, United and ALPA entered into a letter agreement that set forth the terms of a modified collective bargaining agreement. Among other things, ALPA agreed not to oppose United's termination of the United Airlines Pilot Defined Benefit Pension Plan (the Plan) and agreed to waive any claim that such a termination would constitute a breach of the then-existing collective bargaining agreement. ALPA and United also agreed that if the Plan were terminated, United would provide ALPA with convertible promissory notes with a face value of $550 million for the benefit of ALPA's members. The purpose of the notes was to compensate the pilots who no longer would have the

pensions they had expected. The letter agreement between ALPA and United gave ALPA discretion to determine how proceeds from the sale of the notes would be distributed, so long as the allocation was reasonable.

During 2005, ALPA, through its United Master Executive Council (MEC), debated how to allocate the proceeds of the $550 million notes it would receive if the Plan were terminated. By August 2005, ALPA had narrowed the options to three methods, referred to as GAP 1, GAP 2, and partial lump sum amount (PLSA). The GAP 1 method was based on the pilots' actual losses from termination of the Plan that would not be replaced with payments from the Pension Benefit Guaranty Corporation (PBGC).[1] The GAP 2 method projected a pilot's estimated losses assuming the Plan had continued and the pilot had worked until age sixty. The PLSA method involved distribution of the note proceeds according to the partial lump sum amount a pilot would have been entitled to under the Plan. By November 2005, the MEC had voted to remove the GAP 1 and PLSA allocation methods from consideration and was focusing only on GAP 2. At MEC's January 16-20, 2006 meeting, MEC formally selected the GAP 2 methodology. It also reached a decision regarding which pilots would be eligible to receive note proceeds. With regard to furloughed pilots, MEC decided that all furloughed pilots who accepted an offer of recall prior to United's bankruptcy exit date would be eligible to share in the note proceeds. Furloughed pilots who had not been offered or accepted an offer of recall would not be eligible to receive a share of the notes' proceeds.

---

[1] PBGC is a federally chartered corporation established to administer the insurance program for defined benefit pension plans created under Title VI of ERISA, 29 U.S.C. § 1301-1461. PBGC guarantees certain benefits under ERISA pension plans and may terminate underfunded pension plans. *See* 29 U.S.C. § 1342.

On December 30, 2004, PBGC had announced its intention to terminate the Plan because it considered the Plan to be unable to meet its long term obligations, and shortly thereafter PBGC filed suit against United seeking a declaration that it could terminate the Plan. ALPA, United, and other parties opposed PBGC's proposed termination of the Plan. Judge Joan Humphrey Lefkow referred the matter to the bankruptcy judge overseeing United's bankruptcy. On October 28, 2005, the bankruptcy court entered an order terminating the Plan retroactive to December 30, 2004. After much legal wrangling, the details of which are not relevant for present purposes, ALPA appealed the decision of the bankruptcy court to the district court, and the case returned to Judge Lefkow. On June 13, 2006, Judge Lefkow approved PBGC's termination of the Plan, effective December 30, 2004.

After Judge Lefkow ruled that the Plan had been terminated, United issued the $550 million in promissory notes to ALPA. In July 2006, ALPA sold the notes for $545.5 million. In August 2006, ALPA made its first distribution of approximately $355 million, using the GAP 2 methodology it had adopted in January 2006. Consistent with its January 2006 decision, ALPA excluded from the distribution pilots who were furloughed as of the date of United's exit from bankruptcy.

United's plan of reorganization includes an exculpation clause, which provides that "no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, except for gross negligence or willful misconduct. . . ." An Exculpated Claim is "[a]ny Claim related to any act or omission in connection with, relating to, or arising out of [United's] restructuring." Plan of Reorganization at 7. The term Exculpated Party includes ALPA. *See id.* at 121.

4

**Discussion**

Three motions are before the Court. United has moved to dismiss the *Hudson* plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the exculpation clause in the plan of reorganization. The *Hudson* and *Mansfield* plaintiffs have filed motions for class certification pursuant to Federal Rule of Civil Procedure 23.

    **1.    Motion to dismiss**

United argues that the *Hudson* plaintiffs' amended complaint must be dismissed because the exculpation clause in United's plan of reorganization protects ALPA from a suit arising "in connection with, relating to, or arising out of" United's bankruptcy unless the complaint alleges gross negligence or willful misconduct. *See* Plan of Reorganization at 121. United contends that plaintiffs' claims arise out of the bankruptcy and do not allege gross negligence or willful misconduct. It points out that ALPA and United's letter agreement, which required United to provide the notes and ALPA to distribute them in a reasonable manner, was assumed by United and incorporated into the plan of reorganization. The *Hudson* plaintiffs contend that the exculpation clause is inapplicable to their claims because ALPA's allocation and distribution of the note proceeds does not fall within the scope of the clause.

The Court does not need to decide whether the exculpation clause is broad enough to encompass the *Hudson* plaintiffs claims to dispose of United's motion to dismiss. A claim for a labor union's breach of the duty of fair representation requires a showing that the union's actions were arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990). The *Hudson* plaintiffs allege just that. Amend. Compl. at ¶ 5. The Seventh Circuit has held that

5

arbitrary union action "require[s] intentional union misconduct to show a breach of the duty of fair representation." *Nat'l Labor Relations Bd. v. Local 139, Int'l Union of Operating Engineers*, 796 F.2d 985, 993 (7th Cir. 1986); *see also Dahnke v. Teamsters Local* 695, 906 F.2d 1192, 1197-98 (7th Cir. 1990). Though the Seventh Circuit is apparently the only appellate court to require proof of intentional misconduct in breach of duty of fair representation claim, *see Bennett v. Local Union No. 66, Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO et al.*, 958 F.2d 1429, 1436 n.5 (7th Cir. 1992), it has expressly declined to revisit this standard. *Id.* at 1436.

The words "intentional" and "willful" are synonyms, for all practical purposes. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (1993). If plaintiffs are able to sustain their claim, a determination the Court cannot yet make, they will fall within the exception to the exculpation clause. The Court therefore denies United's motion to dismiss.

**2.     Motions for class certification**

      **a.     *Hudson* plaintiffs**

The *Hudson* plaintiffs have moved pursuant to Federal Rule of Civil Procedure 23 to certify a class of United pilots who were furloughed during United's bankruptcy and had deferred recall or had not been offered recall at the time United exited from bankruptcy on February 1, 2006. These pilots contend that ALPA and ALPA's United MEC violated their duty of fair representation by excluding members of the proposed class from sharing in the proceeds of the promissory notes ALPA received from United to partially offset the termination of the Plan.

To succeed on a motion for class certification, plaintiffs must satisfy the requirements of

Federal Rule of Civil Procedure 23(a) and the requirements of one of the subsections of Rule 23(b). Rule 23(a) requires a class so large "that joinder of all members is impracticable"; the existence of "questions of law or fact common to the class"; claims by the named representative that "are typical . . . of the claims . . . of the class"; and a named representative who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The *Hudson* plaintiffs seek certification under Rule 23(b)(1)-(3), which requires that prosecution of separate actions create a risk of "inconsistent or varying adjudications with respect to individual class members" . . . "the party opposing the class has acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . " or "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(1)-(3).[2]

ALPA's objections to the motion for class certification boil down to three contentions: plaintiffs have failed to identify an ascertainable class; the named plaintiffs have failed to demonstrate commonality, typicality, and adequacy of representation because plaintiffs' claims are barred by the statute of limitations; and the named plaintiffs are not proper class representatives because they were eligible to share in the note proceeds but declined to do so.

Plaintiffs bear the burden of identifying an ascertainable class. *Oshana v. Coca-Cola*

---

[2] Though ALPA does not raise the point, Rule 23(b)(2) cannot be a basis to certify the class proposed by plaintiffs because in this circuit, a class may be certified under that rule only when the demand for monetary relief is incidental to a request for injunctive or declaratory relief, which is not the case here. *See Lemon v. Int'l Union of Operating Engineers, Local No. 130*, 216 F.3d 577, 580-81 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999).

*Bottling Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Defendants contend that the *Hudson* plaintiffs' motion for class certification must be denied because neither their complaint nor the motion to certify a class contains a class definition. Plaintiffs correctly point out that their amended complaint seeks to certify a class of "all similarly situated furloughed pilots who have accepted or will accept recall after United's exit from bankruptcy." Amend. Compl. at 5. In their motion to certify a class, they also state that "ALPA has allocated division of the $545.5 million amongst those pilots who were active or who had accepted recall as of the date that United exited from bankruptcy, February 1, 2006. ALPA's allocation decision excluded plaintiffs, and all similarly situated furloughed pilots, such that they will receive nothing." *Hudson* Mot. to Certify at 2. Plaintiffs have adequately identified an ascertainable class.

Defendants' argument that the *Hudson* plaintiffs have failed to carry their burden of demonstrating commonality, typicality, and adequacy of representation under Rule 23(a) is based entirely on their contention that the named plaintiffs' claims are barred by the statute of limitations.[3] The Railway Labor Act (RLA), the act under which plaintiffs bring their claim, does not contain a statute of limitations. *See* 45 U.S.C. § 151 *et seq.* ALPA and plaintiffs disagree regarding what statute of limitations applies to a breach of the duty of fair representation claim brought under the RLA. ALPA contends that a six-month statue of limitations is borrowed from section 10(b) of the National Labor Relations Act (NLRA). *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1269 (7th Cir. 1985)

---

[3] Defendants do not argue that plaintiffs fail to meet the numerosity requirement of Rule 23. Because the class includes approximately sixteen hundred pilots, the impracticality of litigating individual claims is apparent. *See Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 31415767, at *4 (N.D. Ill. Oct. 25, 2002).

(six-month statute of limitations borrowed from section 10(b) of NLRA).

The *Hudson* plaintiffs contend that *United Independent Flight Officers* is not good law. They argue that the Supreme Court abrogated that decision in *G.P. Reed v. United Transp. Union*, 488 U.S. 319 (1989), which holds that a claim solely between a member and his union brought under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2), borrows the statute of limitations from the most closely analogous state law. Plaintiffs contend that the Court should apply either Illinois' five-year statute of limitations for claims for breach of contract, or its ten-year statute applicable to claims for breaches of written contracts. 735 ILCS 5/13/-205-06. The Court need not resolve this issue, because even if the six-month statute of limitations is applied, it does not stand as an obstacle to class certification.

ALPA argues that the statute of limitations begins to run "when 'the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach].'" *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985) (citation omitted). It contends that plaintiffs knew or should have known about MEC's furloughee eligibility decision well before April 23, 2006, six months before they filed this suit. On January 20, 2006, MEC sent an e-mail to United pilots notifying them that the decision had been made. A similar e-mail was sent to furloughed pilots a few days later. Prior to April 23, 2006, the MEC's decision was announced through a March 2006 newsletter, on the MEC's website, and through other means. ALPA contends that each of the named plaintiffs received notice of MEC's sometime prior to April 23, 2006.

ALPA, however, is asking the Court to trigger the running of the statute of limitations on the wrong date. As plaintiffs point out, until ALPA distributed the proceeds of the notes and

9

excluded plaintiffs, there could be no breach of the duty of fair representation. *See Ramey v. District 114 Int'l Assoc. of Machinists and Aerospace Workers*, 378 F.3d 269, 278 (2d Cir. 2004) (a "breach occurs when the union acts against the interests of its members.").

Defendants' reliance on *Clift v. Int'l Union, United Automobile, Aerospace, & Agricultural Implement Workers of America (UAW)*, 818 F.2d 623 (7th Cir. 1987), to support their argument that the statute of limitations begins to run when plaintiffs learned of the union's internal decision is misplaced. In *Clift*, union members brought suit against their union under the Labor Management Relations Act in connection with the ratification of a collective bargaining agreement. The court held that "causes of action based on entry into collective bargaining agreements accrue, and section 10(b) starts to run, when the [collective bargaining] contract is signed. The claim does not wait to accrue until the time at which the contested provisions of the agreement are enforced." *Id.* at 629.

There is, quite obviously, a distinction between a union entering into a binding collective bargaining agreement on behalf of its members and a union advising its members that it had reached an internal decision that will be put into effect at some point in the future. The former results in a binding contract that actually causes injury to the aggrieved union members; the latter is merely an internal decision with no legal effect that could be changed at any time or never effectuated at all. In fact, *Clift* actually cuts against defendants' position. Under defendants' reading, the statute of limitations on plaintiffs' claims in *Clift* should have accrued when the union internally decided to enter into the collective bargaining agreement, not when the agreement was actually signed. *Clift* contains no such holding, nor would such a rule make sense. It would force potentially aggrieved union members to run into court based on the

10

outcome of a union hall debate long before the union actually made a binding decision with which the members take issue. In this case, the *Hudson* plaintiffs' cause of action did not accrue until August 2006, when ALPA distributed the notes proceeds but left out the furloughed pilots. If a breach of the duty of fair representation occurred, that is when it occurred. The *Hudson* plaintiffs' complaint was filed only two months after the distribution and is therefore timely even under the proposed six-month limitations period.

For these reasons, the proposed six-month statute of limitations poses no obstacle to plaintiffs' ability to show that they have identified an ascertainable class and have satisfied the Rule 23(a) requirements of commonality and typicality. Nor does it prevent plaintiffs from showing that the prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class as required under Rule 23(b)(1) or that common questions of law or fact predominate over individual issues as required by Rule 23(b)(3).

The only other objection to class certification defendants raise is that plaintiffs' claims do not meet the commonality and typicality requirements of Rule 23(a) because they could have accepted an offer of recall prior to the bankruptcy exit date but declined to do so. Therefore, defendants argue, the named plaintiffs cannot fairly represent pilots within the proposed class who could not have been recalled and were never eligible to share in the note proceeds. Plaintiffs dispute that they could have accepted recall in the seven-day window between the allocation announcement and United's exit from bankruptcy, because they did not learn about the allocation decision until several months later. In any event, defendants have not explained why failure to accept recall prior to the bankruptcy exit date would render named plaintiffs'

11

interests antagonistic to or in conflict with the rest of the class. The fact remains that named plaintiffs, and all other class members, did not share in the note proceeds because they were on furlough as of United's bankruptcy exit date.

Defendants raise no other obstacles to class certification under Rule 23(a) or 23(b) and have therefore forfeited any other arguments. *See Volovsek v. Wisconsin Dep't of Agr. Trade & Consumer Protection*, 344 F.3d 680, 689 n.6 (7th Cir. 2003) (complete absence of legal argument waives consideration of claim); *see also Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) ("Given our adversary system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). The Court does not say this, however, to be critical of ALPA or its counsel. These cases are a paradigm of the type of case in which class certification is not merely appropriate, but virtually necessary to the appropriate management of a judicial system and complex civil litigation: a case involving a single decision that impacted a large group of similarly situated persons in the same way. It would make no sense to require such claims to be litigated individually.

The Court finds that the *Hudson* plaintiffs have met the requirements of Rule 23(a) and 23(b)(1) and (3) and certifies a class of United pilots who had not been offered or accepted recall as of United's February 1, 2006 exit from bankruptcy and did not receive a share of the note proceeds. The Court has some concern, however, regarding the class action-related qualifications of proposed class counsel. Only one of the three attorneys currently representing the *Hudson* plaintiffs has any prior experience in class action litigation and his experience, as he has described it to the court, consists of only three cases other than this one over a period

consisting of the last sixteen years of the twenty-five years he has been a lawyer. All three *Hudson* counsel have significant experience in commercial litigation, but the Court is concerned regarding their relative lack of class action experience. In addition, the Court has no prior personal experience with any of the three lawyers, two of whom are from out of state. For these reasons, the Court defers appointment of counsel for the *Hudson* class pending association of additional experienced counsel and/or submission of additional materials showing that current counsel meet the standards set forth in Federal Rule of Civil Procedure 23(g).

### b. *Mansfield* plaintiffs

The *Mansfield* plaintiffs seek to certify a class of United pilots active as of January 1, 2005, who would have received more from the allocation of the note proceeds under the GAP 1 methodology than under the GAP 2 methodology used by ALPA. They contend that they meet the requirements of Rule 23(a) as well as those of Rule 23(b)(1)(B), (b)(2), and (b)(3), only one of which is necessary to certify a class. ALPA raises two arguments in opposition to class certification: plaintiffs' claims are barred by the statute of limitations, and conflicts within the class preclude a finding of commonality and typicality under Rule 23(a).

ALPA's objections to class certification based on the statute of limitations fail for the reasons the Court articulated in its analysis of the *Hudson* plaintiffs motion for class certification. As explained above, assuming that a six-month statute of limitations applies to plaintiffs' RLA claims, the claims did not accrue until August 2006 when ALPA distributed the note proceeds to plaintiffs' alleged detriment. This issue is no barrier to class certification.

ALPA also argues that the *Mansfield* plaintiffs cannot meet Rule 23(a)'s commonality, typicality, and adequacy of representation requirements because their interests conflict with

13

other potential class members. They point to several pilots who apparently have decided not to become part of the class. But that, in and of itself, is not an obstacle to class certification. Parties often choose to opt out of a class for one reason or another. Indeed, Rule 23(c)(2)(B) expressly authorizes potential class members to opt out of a class in cases predicated on Rule 23(b)(3). Thus, the possibility of opt-outs cannot possibly mean that certification is inappropriate. *See Lemon*, 216 F.3d at 580 ("in recognition of the potential divergence of interests within the class, each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action . . . . Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3)."). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999).[4] Apart from arguing that several pilots may opt out, ALPA has not pointed to any potential conflicts of interest that would preclude class certification.

The *Mansfield* plaintiffs have met their burden under Rule 23(a) to show numerosity, commonality, typicality, and their ability to adequately represent the interests of the class. The Court finds that class certification is appropriate pursuant to Rule 23(b)(1) because separate actions would create a risk of adjudications with respect to individual members of the class that would be dispositive of the interests of other members not party to the suit. Certification is also appropriate under Rule 23(b)(3) because common issues of fact and law predominate over potential individual issues and there is no doubt that it would be difficult and unwieldy for United's senior pilots to bring what could amount to almost two thousand individual suits. The

---

[4] The Court will not hesitate to reexamine the appropriateness of certification if the number of opt-outs proves to be significant.

Court therefore certifies a class of United pilots active as of January 1, 2005, who would have received more from the allocation of the note proceeds under the GAP 1 methodology than under the GAP 2 methodology used by ALPA.

ALPA has not contested the ability of the *Mansfield* plaintiffs' counsel to serve as class counsel. The Court has reviewed the qualifications of proposed counsel and finds that counsel meet the requirements of Rule 23(g). The Court therefore appoints Myron M. Cherry and Daniel J. Becka of Myron M. Cherry & Associates LLC to serve as class counsel in the *Mansfield* case.

**Conclusion**

For the foregoing reasons, the Court denies United's motion to dismiss in the *Hudson* case and grants the *Hudson* and *Mansfield* plaintiffs' motions for class certification [Case No. 06 C 6869, docket no. 11; Case No. 07 C 590, docket no. 40]. ALPA's motion to dismiss in the *Mansfield* case is terminated as moot, in light of the addition of another plaintiff or plaintiffs following filing of the motion [Case No. 06 C 6869, docket no. 24]; if ALPA wishes to pursue the motion, it should advise the Court at the next status hearing. Both cases are set for a status hearing on July 31, 2007 at 9:30 a.m.

                                          MATTHEW F. KENNELLY
                                          United States District Judge

Date: July 9, 2007