IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. MANSFIELD, JR., MICHAEL W. BALLARD, JERRY H. GALLUD, MICHAEL GLAWE, DENNIS HOLMAN, RICHARD E. MILLER, JR., and PAUL W. WHITEFORD, JR., Individually and on Behalf of All Others Similarly Situated, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 06 C 6869<br>) |
| AIR LINE PILOTS ASSOCIATION INTERNATIONAL, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |
| UNITED AIRLINES, INC., | )<br>) |
| Intervenor. | )<br>) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are senior pilots currently or formerly employed by United Airlines, Inc. who contend, on behalf of themselves and a certified class, that their union, the Air Line Pilots Association (ALPA), breached its duty of fair representation in distributing the proceeds of $550 million in convertible notes it received as part of United's bankruptcy. The Court granted United leave to intervene in the case. ALPA has moved to exclude retirees from the class previously certified by the Court and has renewed its motion to dismiss Mansfield as a plaintiff for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). For the

following reasons, the Court denies ALPA's motion.

## Facts

The following facts are drawn from the Court's July 9, 2007 order certifying a class. *Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06 C 6869, 2007 WL 2048664 (N.D. Ill. July 9, 2007).

> On December 9, 2002, United and its related corporations filed a voluntary petition to reorganize pursuant to Chapter 11 of the United States Bankruptcy Code. As part of its restructuring, United entered into negotiations with each of its unions to renegotiate its collective bargaining agreements in an effort to cut its costs. On January 1, 2005, United and ALPA entered into a letter agreement that set forth the terms of a modified collective bargaining agreement. Among other things, ALPA agreed not to oppose United's termination of the United Airlines Pilot Defined Benefit Pension Plan (the Plan) and agreed to waive any claim that such a termination would constitute a breach of the then-existing collective bargaining agreement. ALPA and United also agreed that if the Plan were terminated, United would provide ALPA with convertible promissory notes with a face value of $550 million for the benefit of ALPA's members. The purpose of the notes was to compensate the pilots who no longer would have the pensions they had expected. The letter agreement between ALPA and United gave ALPA discretion to determine how proceeds from the sale of the notes would be distributed, so long as the allocation was reasonable.
>
> During 2005, ALPA, through its United Master Executive Council (MEC), debated how to allocate the proceeds of the $550 million notes it would receive if the Plan were terminated. By August 2005, ALPA had narrowed the options to three methods, referred to as GAP 1, GAP 2, and partial lump sum amount (PLSA). The GAP 1 method was based on the pilots' actual losses from termination of the Plan that would not be replaced with payments from the Pension Benefit Guaranty Corporation (PBGC). The GAP 2 method projected a pilot's estimated losses assuming the Plan had continued and the pilot had worked until age sixty. The PLSA method involved distribution of the note proceeds according to the partial lump sum amount a pilot would have been entitled to under the Plan. By November 2005, the MEC had voted to remove the GAP 1 and PLSA allocation methods from consideration and was focusing only on GAP 2. At MEC's January 16-20, 2006 meeting, MEC formally selected the GAP 2 methodology. It also reached a decision regarding which pilots would be eligible to receive note proceeds. With regard to furloughed pilots, MEC decided that all furloughed pilots who accepted an offer of recall prior to United's bankruptcy exit

> date would be eligible to share in the note proceeds. Furloughed pilots who had not been offered or accepted an offer of recall would not be eligible to receive a share of the notes' proceeds.
>
> On December 30, 2004, PBGC had announced its intention to terminate the Plan because it considered the Plan to be unable to meet its long term obligations, and shortly thereafter PBGC filed suit against United seeking a declaration that it could terminate the Plan. ALPA, United, and other parties opposed PBGC's proposed termination of the Plan. Judge Joan Humphrey Lefkow referred the matter to the bankruptcy judge overseeing United's bankruptcy. On October 28, 2005, the bankruptcy court entered an order terminating the Plan retroactive to December 30, 2004. After much legal wrangling, the details of which are not relevant for present purposes, ALPA appealed the decision of the bankruptcy court to the district court, and the case returned to Judge Lefkow. On June 13, 2006, Judge Lefkow approved PBGC's termination of the Plan, effective December 30, 2004.
>
> After Judge Lefkow ruled that the Plan had been terminated, United issued the $550 million in promissory notes to ALPA. In July 2006, ALPA sold the notes for $545.5 million. In August 2006, ALPA made its first distribution of approximately $355 million, using the GAP 2 methodology it had adopted in January 2006.

*Id.* at \*1-2 (footnote omitted).

The *Mansfield* plaintiffs contend that ALPA breached its duty of fair representation by utilizing an allocation method that provided a windfall to United's junior pilots at the expense of the senior pilots. On July 9, 2007, the Court certified a class of United pilots active as of January 1, 2005 who would have received more from the allocation of the note proceeds under the GAP 1 methodology than under the GAP 2 methodology used by ALPA. *Id.* at \*7. The Court also certified a class in a related case, *Hudson v. Air Line Pilots Ass'n Int'l*, No. 07 C 590, overruling ALPA's statute of limitations objections. The Court held that until ALPA distributed the note proceeds, plaintiffs' claims for breach of the duty of fair representation did not accrue. *Id.* at \*5-6.

3

**Discussion**

ALPA has moved to exclude retirees from the *Mansfield* class previously certified by the Court and to dismiss Mansfield, a pilot who retired prior to the August 2006 distribution of note proceeds. ALPA contends that a union's duty of fair representation ceases when members are no longer part of the bargaining unit, for example, when they retire. Some members of the certified class who were active pilots when ALPA and United entered into the January 1, 2005 letter agreement retired prior to the distribution of the note proceeds in August 2006. ALPA argues that because the Court previously held that plaintiffs' claims for breach of the duty of fair representation did not accrue until August 2006, pilots who retired prior to that date (approximately nineteen percent of the class members) must be excluded from the class because the union no longer owed them a duty of fair representation as of August 2006. In the same vein, ALPA argues that Mansfield's claims must be dismissed because he would lack standing; he is one of the pilots who retired prior to distribution of the note proceeds. *See Serpe v. Williams*, 776 F. Supp. 1285, 1286 (N.D. Ill. 1991) (class members who lack standing must be dismissed).

Generally speaking, a union's duty of fair representation runs only to members of the bargaining unit for whom the union acts as exclusive representative. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Accordingly, the duty of fair representation does not extend to workers who have retired. *Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 166 (1971) ("Nowhere in the history of the National Labor Relations Act is there any evidence that retired workers are to be considered as within the ambit of the collective-bargaining obligations of the statute."). The Supreme Court has explained that "[s]ince retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them

in negotiations with the employer." *Id.* at 182 n.20.

This case, however, is plainly distinguishable from the cases cited by ALPA. Here, ALPA represented all the pilots it now seeks to exclude from the class when it negotiated the January 1, 2005 letter agreement with United in which ALPA agreed not to oppose termination of the Plan and to accept $550 in convertible notes if United terminated the Plan. The letter agreement stated that the eligibility for and allocation of the note proceeds would be "reasonably determined by [ALPA]." Def. Ex. 2, ¶ 5. ALPA also represented all those pilots during its internal discussions regarding how to allocate the note proceeds.

ALPA does not dispute that the current class members, including those who retired prior to the August 2006 distribution of note proceeds, lacked the right or ability to negotiate individually with United regarding the terms of the letter agreement and ALPA's allocation of the note proceeds. If ALPA's argument is correct, the recent retirees have no legal recourse against anyone by fortuity of the fact that they retired prior to the actual distribution. Specifically, they cannot sue ALPA for breach of the duty of fair representation, and they cannot sue United either, because ALPA represented them when the letter agreement and allocation issues were being decided. ALPA takes this position one step further. It argues that it would have been well within its rights to allocate nothing to the recent retirees and, if it had done so, the recent retirees still would lack the ability to sue ALPA for breach of the duty of fair representation. Mot. at 12.

None of the cases ALPA cites for the proposition that a union does not have a duty of fair representation to retirees holds that union members who retire while the union is acting as their representative on a particular matter lose standing to sue because the matter is not finally

determined until after they retire. The rationale behind the general rule that a union does not owe a duty of fair representation to retirees shows why this is the case. As plaintiffs point out, retirees are generally not part of the bargaining unit. Accordingly, the union has no right or obligation to bargain on their behalf. *See Allied Chem.*, 404 U.S. at 166. Here, by contrast, the union actually bargained on behalf of the recent retirees with regard to the letter agreement and allocation and distribution of the note proceeds. Therefore, although the recent retirees are not part of the unit for bargains made after they retire, it does not follow that the union ceases to owe them a duty with respect to particular bargains it had already made on their behalf the instant they retire.

In another context the Court considers analogous, the Seventh Circuit has ruled that a union may act as the representative of retirees if the retirees choose to make the union their agent, and the union then acts on their behalf. In *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), the issue was whether an employer was required to arbitrate a grievance filed by a union concerning changes it made to retiree health benefits. The court agreed that the employer had no obligation to arbitrate the union's grievance, relying on the general rule that the retirees were not members of the bargaining unit and thus were not represented by the union. *Id.* at 539-40. The court noted, however, that the retirees were free to deal directly with the employer in pursuing their claims that the employer had breached the collective bargaining agreement. *Id.* at 540. And significantly for present purposes, the court stated that "[a]lthough a union has no duty to represent retirees . . . , retirees are free to make a union their agent if they so choose." *Id.*

In the present case, when ALPA signed the letter agreement with United and thereby relinquished any right to sue the company for termination of the Plan, the recent retirees were still active pilots represented by ALPA. As a result, unlike the retirees in *Rossetto*, they now lack

6

the ability to sue United directly. But *Rossetto* indicates that retirees can make a union their agent and if they do so the union can act on their behalf–and, as such, presumably owe them the duties that such an agency relationship entails.[1] Because plaintiffs' allegations would support a conclusion that ALPA acted as the agent for the recent retirees when it made the allocation, and for the other reasons discussed above, dismissal of Mansfield's claim and removal of the recent retirees from the class would be inappropriate at this juncture.

ALPA relies heavily on a case from this district, *Toth v. USX Corp.*, 693 F. Supp. 693 (N.D. Ill. 1988), but in the Court's view, *Toth* does not support ALPA's position. In that case, union members who had left active employment for full time positions with the union sued the union for breach of the duty of fair representation for failing to inform them of a change to the employer's extended leave policy for former employees. The court noted that the union owes a duty of fair representation only to employees for whom it serves as the exclusive representative. *Id.* at 700. The court also noted that "[i]f a union does not serve as the exclusive agent for the members of the bargaining unit *with respect to a particular matter*, there is no corresponding duty of fair representation." *Id.* (emphasis added). The court then stated that "[i]f persons are free to pursue their interests on their own, *i.e.*, are not subordinated to the union's exclusive control, the rationale for the duty of fair representation evaporate[s], and the union owes them no duty of fair representation." *Id.* (internal quotations and citation omitted). As discussed above, Mansfield and the other recent retirees contend that ALPA was their representative with regard to the allocation and distribution of the note proceeds. Moreover, the recent retirees were and are

---

[1] The Court has not been called upon to identify the precise contours of the obligations of a union in this context.

7

unable to pursue their own interests vis-à-vis United. *Toth* does not help ALPA in this regard.

**Conclusion**

For the foregoing reasons, the Court denies ALPA's motion to exclude retirees from the class and to dismiss Mansfield as a plaintiff [docket no. 112]. The case is set for a status hearing on October 9, 2007 at 9:30 a.m. to address the disputed issues regarding the proposed notice to class members.

                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: October 1, 2007