# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6869 & 07 C 590 | **DATE** | 5/3/2009 |
| **CASE TITLE** | Mansfield, et al. vs. Air Line Pilots Assn. <br> Hudson, et al. vs. Air Line Pilots Assn. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the Court denies defendants' motion to bar [06 C 6869, # 189] and motion for extension [06 C 6869, # 187; 07 C 590, # 119]. Deadlines are reset as follows: Rule 26(a)(2) disclosures, 5/11/09 plaintiffs, 5/29/09 defendants; depositions of plaintiffs' experts by 6/19/09 and defendants' experts by 7/10/09; defendants' dispositive motions, 7/10/09; plaintiffs' responses and cross-motions, 7/31/09; defendants' replies / responses, 8/10/09; plaintiffs' replies, 8/20/09. Status report on plaintiffs' follow-up fact discovery is to be filed by 5/8/09 as described below. Defendant's response to *Mansfield* plaintiffs' motion for sanctions is to be filed by 5/8/09 at 4:30 p.m. Status hearing is set to 5/11/09 at 8:45 a.m.

■[ For further details see text below.]          Docketing to mail notices.

# STATEMENT

*Mansfield v. ALPA* is a class action suit by a group of current and former pilots of United Air Lines against the Air Line Pilots Association. The plaintiffs contend that ALPA breached its duty of fair representation in its allocation among pilots of $550 million in convertible notes issued by United as part of a deal involving the termination of its pension plan. *See generally Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06 C 6869, 2007 WL 2048664, at *1-2 (N.D. Ill. July 9, 2007). In July 2007, the Court certified a class consisting of "United pilots active as of January 1, 2005, who would have received more from the allocation of the note proceeds under the GAP 1 methodology than under the GAP 2 methodology used by ALPA." *Id.* at *7. "Gap 2" and "Gap 1" describe two methodologies that ALPA considered; it rejected Gap 1 and approved Gap 2.

*Hudson v. ALPA* is a separate but related class action against ALPA arising from its allocation of the proceeds of the convertible notes.

**1.** **ALPA's motion "to bar the *Mansfield* plaintiffs from pursing any claim other than the one set forth in their October 24, 2007 class notice"**

Notice was sent to the *Mansfield* class members in October 2007. It described the class as stated above. The notice described the class's claims as follows:

> Plaintiffs' claims arise out of ALPA's conduct, acting through its United Master Executive Council ("MEC"), in allocating and causing to be distributed the net proceeds from the sale of the $550 million (face value) in securities (the "Pilot Notes" or "Notes") using the "GAP 2" methodology. The Notes were provided pursuant to a Letter of Agreement between United,

**STATEMENT**

UAL, and ALPA, dated January 1, 2005, and in connection with United's bankruptcy proceedings.

Pl. Resp. to Def. Mot. to Bar, Ex. A at 1.

ALPA has filed a motion seeking to confine the plaintiff class to a single theory of liability and damages, specifically, a theory that ALPA should have used Gap 1 rather than Gap 2 in allocating the notes. The impetus for defendants' motion is their claimed recent realization that plaintiffs are pursuing two alternate theories of liability and damages. The first is based on plaintiffs' contention that having improperly rejected Gap 1, the MEC inappropriately made further changes to the Gap 2 method so that it was even more advantageous to the allegedly favored group of ALPA members and more disadvantageous to the disfavored group. The second is based on plaintiffs' contention that there was a third method – which they call "Gap 3" – that they claim ALPA also improperly rejected and that would have been, in plaintiffs' view, more equitable.

The primary legal basis for ALPA's motion is their contention that plaintiffs' complaint set forth a single legal theory, based on the selection of Gap 2 over Gap 1. They contend that class certification was based on this single theory, that this theory was adopted in the notice to the class, and that each of the class representatives has testified that Gap 1was the only reasonable allocation method. The Court deals with the latter point first. ALPA cites no legal authority, and the Court is aware of none, to support the proposition that a plaintiff can pursue a liability or damages theory only if he ascribes to it in his deposition testimony. Legal theories are typically crafted by lawyers, not clients. The class members' testimony may provide appropriate grist for cross-examination at trial, but it is not a basis to limit how the class tries to prove its case.

The Court also rejects ALPA's contention that the class notice somehow adopted a single legal theory. No such language appears in the notice, either directly or by implication.

ALPA is correct that plaintiffs' complaint is premised on a Gap 1 / Gap 2 dichotomy and that it contains no direct reference to what plaintiffs refer to as the "unbiased Gap 2" theory or to the "Gap 3" theory. That is unsurprising; the papers on the present motion reflect that plaintiffs' counsel discovered the basis for these theories during discovery in the present case. The fact that a plaintiff describes something in his complaint that might be called a legal theory is not, however, a basis to confine him to that theory in proving his case. As plaintiffs point out in their response to ALPA's motion, the Federal Rules of Civil Procedure do not require a plaintiff to please a legal theory. *See, e.g., McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005); *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003).

To the extent ALPA is suggesting that plaintiffs should be confined to the Gap 1 theory because it is unfair to ALPA to permit plaintiffs to pursue other theories now that the case is this far along, the Court rejects that contention as well. If ALPA read the complaint and the Rules to confine plaintiffs to the Gap 1 theory because that was the only one they specifically referenced in their complaint, that was their mistake. In addition, they had ample opportunity to discover, via interrogatories or otherwise, plaintiffs' legal theories. In any event, there is good reason to believe that ALPA knew via the course of questioning during depositions, or at least reasonably should have known, that plaintiffs were not confining themselves to the Gap 1 theory.

For these reasons, the Court denies ALPA's motion to bar.

**STATEMENT**

This does not mean, however, that plaintiffs or their counsel are out of the woods. In their response to ALPA's motion, plaintiffs state that their unbiased Gap 2 theory, if accepted by a jury, would benefit 1,190 of the 2,261 class members who received notice, but that the other 271 would receive nothing. Pl. Resp. to Def. Mot. to Bar at 13. They further state that their Gap 3 theory, if accepted by a jury, would benefit 2,194 of the 2,261 class members who received notice, but that the other 67 would receive nothing. *Id.* It appears that Gap 1 is plaintiffs' preferred damage theory (it provides the greatest total damages) and that the other two may be fallbacks. But lawyers typically adopt fallback positions to account for the risk that their primary position will be rejected either by the judge or the jury. The Court cannot ignore the possibility that plaintiffs ultimately might jettison, or be required to jettison, the Gap 1 theory as the case proceeds.

In a single-plaintiff case, or a multiple-plaintiff case in which the plaintiffs' attorney was directly retained by the plaintiffs, the advancement of alternative theories that benefit different plaintiffs in different ways likely would pose no problem. This, however, likely is not true in a class action case, in which the attorneys for the class are approved by the Court and essentially foisted on the unnamed class members. Certification of a class obliges class counsel, as well as the representative plaintiffs, to proceed as fiduciaries for all members of class, rather than to try to maximize the outcome for some at the potential expense of others. *See Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004); *see also, e.g., Dechert v. Cadle Co.*, 333 F.3d 801, 803 (7th Cir. 2003) (class representative has fiduciary duty "to represent all members of the class equally"); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("A representative plaintiff acts as fiduciary for the others.").

ALPA points out this problem but has proposed the wrong remedy, namely, confining the plaintiff class to a single theory, thereby limiting the plaintiffs' room to maneuver. That "solution" might further ALPA's interests for litigation purposes, but it is not the proper remedy as discussed above. Plaintiffs, for their part, do not even acknowledge the possibility of an intra-class conflict problem in their response to ALPA's motion. (There is no small amount of irony in the fact that in a case in which the plaintiffs are suing their union representatives for unfairly favoring some union members over others, they and their counsel arguably are doing something similar in prosecuting the case.)

Even though neither party has proposed an appropriate way to deal with the potential problem, the Court cannot leave it at that; it, too, has an obligation to protect unnamed class members. *See Reynolds v. Beneficial Nat'l Bank*, 277 F.3d 277, 279 (7th Cir. 2002). The Court suggests that at a minimum, class members who might find themselves on the short end of things in the event the unbiased Gap 2 or Gap 3 methodologies were used (and maybe all class members) are entitled to notice of this and a further opportunity to opt out of the class or intervene to protect their own interests. *See* Fed. R. Civ. P. 23(d)(1)(B) (after certification, court may require appropriate notice to some or all class members of, among other things, any step in the action, or the members' "opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action").

Because this matter is coming to the Court's attention at an advanced stage of the case, the Court will insist that it be dealt with expeditiously, on a schedule to be set at the May 4, 2009 status hearing. The Court also notes that in their response to ALPA's motion, plaintiffs say that they have ascertained via discovery and analysis that there are additional ALPA members who did not receive the original class notice but who fall within the class as the Court defined it. The Court will insist that this, too, be dealt with expeditiously.

**2.      ALPA's motion for extension of schedule**

In a separate motion filed in both the *Mansfield* and *Hudson* cases, ALPA seeks to extend all of the

**STATEMENT**

remaining deadlines in the pretrial schedule by approximately one month and, implicitly, to vacate the trial date. The Court previously entered an order saying that it would entertain extension of interim dates but would not reset the trial date. (The Court notes that it remains to be determined whether *Mansfield* and *Hudson* will be tried together, and if not, which case will be tried first.)

ALPA's motion, on its face, fails to set forth a proper basis to extend the schedule. ALPA relies on deficiencies in its own document production – specifically, its recent discovery that a member of the MEC has additional documents responsive to requests served by plaintiffs long ago. It also cites the parties' mutual understanding that certain depositions will be taken after the fact discovery cutoff date. The Court has no problem with an agreement to take fact discovery after the date the Court set, so long as this does not affect any other deadline that the Court set. But the fact that ALPA has now learned that a MEC representative did not timely produce documents – not the first time that has occurred in this case – does not provide a basis for *ALPA* to get more time to take discovery. The Court acknowledges that this is a complicated case and that ALPA's lawyers have had a lot on their plate. But the deadlines were set long ago, and ALPA had more than ample time to do the due diligence necessary to satisfy its discovery obligations.

In their response to the motion, the *Mansfield* plaintiffs affirm the existence of an agreement to take certain depositions after the close of fact discovery. They oppose, however, an extension of time for ALPA to take fact discovery. The Court agrees and therefore denies ALPA's request. The *Mansfield* plaintiffs propose a reopening of fact discovery for the exclusive purpose of allowing plaintiffs to "explore any issues raised by ALPA's latest production [of documents] as Plaintiffs deem appropriate, including the re-taking of any depositions already taken [,] at ALPA's expense." Pl. Resp. to Def. Mot. for Extension at 6. They also propose a more modest extension of some, but not all, of the other pretrial deadlines the Court previously set. *See id.* Finally, the *Mansfield* plaintiffs seek imposition of sanctions and remedial measures due to ALPA's belated production of documents.

The Court adopts, with some slight modifications, the schedule proposed by the *Mansfield* plaintiffs in their response to the motion and reaffirms that it will not continue the trial date of November 2, 2009. The Court notes that under the new schedule, rather than having each side file simultaneous dispositive motions, defendants will be required to file any such motion first, with plaintiffs thereafter filing a response and cross motion (if any).

The new deadlines, for both the *Mansfield* and *Hudson* cases, are as follows:

- Plaintiffs' Rule 26(a)(2) disclosures: May 11, 2009
- Defendants' Rule 26(a)(2) disclosures: May 29, 2009
- Depositions of plaintiffs' experts: June 19, 2009
- Depositions of defendants' experts: July 10, 2009
- Defendants' dispositive motions: July 10, 2009
- Plaintiffs' responses and cross motions: July 31, 2009
- Defendants' replies / responses: August 10, 2009
- Plaintiffs' replies on cross motions: August 20, 2009

In addition, plaintiffs may take reasonable follow-up discovery based on ALPA's recent production of documents. As the Court has made clear at previous status hearings, ALPA will be required to produce in Chicago, at its own expense, any witnesses who reasonably must be redeposed. Contrary to the *Mansfield* plaintiffs' proposal, the Court intends to keep control over the scheduling of this follow-up discovery. The parties are directed to file a joint status report by no later than May 8, 2009 setting forth an agreed specific

**STATEMENT**

schedule for any such discovery by plaintiffs (names, dates, and length of follow-up depositions) or, if they cannot agree, alternative proposed schedules and justification for redeposition of any disputed person. Both cases are set for a further status hearing on May 11, 2009 at 8:45 a.m., in chambers.

The *Mansfield* plaintiffs' request for sanctions, set forth in their response to ALPA's motion for extension, is taken under advisement. ALPA is directed to file a response by no later than 4:30 p.m. on May 8, 2009.