**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOHN P. MANSFIELD, JR., MICHAEL W.** ) | |
| **BALLARD, JERRY H. GALLUD, MICHAEL** ) | |
| **GLAWE, DENNIS HOLMAN, RICHARD E.** ) | |
| **MILLER, JR., and PAUL W. WHITEFORD,** ) | |
| **JR., individually and on behalf of all** ) | |
| **others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **No. 06 C 6869** |
| ) | |
| **AIR LINE PILOTS ASSOCIATION** ) | |
| **INTERNATIONAL,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **UNITED AIRLINES, INC.,** ) | |
| ) | |
| **Intervenor.** ) | |
| ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are senior pilots currently or formerly employed by

United Airlines, Inc. (United) who contend, on behalf of themselves and a certified

class, that their union, the Air Line Pilots Association International (ALPA), breached its

duty of fair representation under the Railway Labor Act, 45 U.S.C. § 152 (RLA). The

Court granted United leave to intervene in the case. ALPA and United have moved for

summary judgment. For the following reasons, the Court denies ALPA's and United's

motions.

**Facts**

Because defendants have moved for summary judgment, the Court views the facts in the light most favorable to plaintiffs and draws reasonable inferences in their favor.  *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

ALPA is a labor union subject to the provisions of the RLA and functions as the bargaining representative for pilots employed by United.  The decisions challenged in this lawsuit were made by ALPA's United Airlines Master Executive Council (MEC). The MEC is comprised of fifteen United pilots who vote on issues collectively affecting United pilots.  Twelve of those members are elected from eight local councils, and the last three members are selected by the other members of the MEC.  The MEC appointed several pilots to serve on its Retirement and Insurance Committee (RIC). The parties dispute whether the RIC provided the MEC with substantive recommendations regarding employee compensation and benefits or whether it simply acted as a conduit for information between the MEC and outside consultants.

In 2002, United filed for bankruptcy protection.  As part as its efforts to reorganize in bankruptcy, United sought to terminate its pilots' defined benefit pension plan, known as the A Plan.  In December 2004, the MEC approved a new collective bargaining agreement that provided ALPA would not oppose United's efforts to terminate the A Plan.  The new agreement created a defined contribution retirement plan for the pilots, known as the C Plan.  United also agreed to issue $550 million of convertible notes to the pilots, though the agreement did not specify how the proceeds

2

of those notes should be apportioned among the pilots.  Plaintiffs contend that the C

Plan was established to compensate pilots for the loss of future, un-accrued benefits,

whereas the notes were intended to compensate ALPA members solely for the loss of

accrued A Plan benefits.  ALPA and United disagree with that contention and have

submitted evidence indicating that no such allocation was ever intended.

In December 2004 and January 2005, the MEC made a number of presentations

to pilots about the proposed collective bargaining agreement.  These presentations

included the fact that the MEC would determine how to allocate the notes among the

pilots but that the MEC would seek the pilots' input to accomplish that task.  In January

2005, the pilots ratified the new collective bargaining agreement.

ALPA contends that for over the twelve months, the MEC obtained extensive

advice and information from actuaries and United's pilots regarding how it should

apportion the proceeds from the notes.  ALPA also contends that it examined and

considered a wide array of allocation methodologies.  One method, GAP 2, proposed to

allocate the proceeds from the notes based upon a calculation of each pilot's lost

accrued benefits under the A Plan as well as lost future benefits.  Various versions of

GAP 2 were considered using different assumptions, including the length of time the A

plan would have continued, the discount rate for future losses, and projections of

benefits under the new C Plan.  Another allocation method, GAP 1, would have

apportioned the notes based solely on losses for benefits already accrued under the A

Plan.

The GAP 1 allocation would have yielded the greatest benefit for more senior

pilots, i.e., those with the longest tenure of service. Under GAP 1, several thousand United pilots would not have received any portion of the proceeds of the notes. GAP 2, by contrast, provided a share of the proceeds of the notes to more pilots, though the so-called senior pilots would receive less. Another method under consideration, Partial Lump Sum Account (PLSA), would result in the senior pilots receiving even less. Thirteen of the fifteen MEC members fared better under the GAP 2 or PLSA formulas than they would under GAP 1. In October 2005, the MEC voted to eliminate GAP 1 and PLSA as options. Eventually, the MEC adopted GAP 2.

Though plaintiffs concede that the year-long review by the MEC and numerous meetings with pilots in the local councils took place, they contend that the entire process was essentially a sham, because the MEC had already determined that it would reject the GAP 1 allocation method. For example, one MEC member, Kirk Reinhardt, claims that the MEC members had already made up their minds against GAP 1 as early as the January 2005 MEC meeting. Similarly, even though ALPA contends that the decision to eliminate GAP 1 was not made until the October 2005 MEC vote, an August 31, 2005 e-mail from the chairman of the RIC states "[t]he MEC feels GAP 1 is no from the start since half the pilots don't get anything and the PLSA may not be fair to the older pilots. But they don't like the assumptions." Pls.' 56.1 Statement Ex. 39. Other e-mails from the same period contain similar statements about the non-viability of GAP 1. Plaintiffs have also presented evidence that the RIC chairman told pilots that the MEC had manipulated certain assumptions in order to choose a note allocation method.

4

**Discussion**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**1.      ALPA's duty of fair representation**

Pursuant to the RLA, a union owes a duty of fair representation to its members. *E.g.*, *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). "[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)); *see also Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1083 (7th Cir. 1994). To succeed on a claim that a union breached its duty of fair representation, a plaintiff must establish at least one of these three types of conduct with "substantial evidence." *Id.* With respect to the "arbitrary" prong of the standard, review of a union's actions "is very deferential." *Id.*

The fact that the MEC chose an allocation method that favored one group of pilots over another is not by itself indicative of a breach of the duty of fair

representation. *See O'Neill*, 499 U.S. at 1136 ("[T]he final product of the bargaining process may constitute evidence of a breach of duty only it if can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary.") (internal quotation marks omitted); *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1529-30 (7th Cir. 1992). Indeed, given the finite amount of funds available to distribute to the pilots, such a result was inevitable. Nor does the fact that a majority of pilots did better under GAP 2 than GAP 1 mean by itself that ALPA breached its duty to the minority of pilots who faired worse under the selected allocation method. *E.g.*, *Griffin*, 32 F.3d at 1083.

ALPA's motion for summary judgment fails, however, because disputed material facts exist. When these facts are viewed in the light most favorable to plaintiffs, a reasonable jury could determine that ALPA breached its duty of fair representation. As detailed above, plaintiffs have adduced evidence indicating that the MEC had decided to reject GAP 1, while at the same telling the pilots that GAP 1 was a viable option and ostensibly engaging in analysis of the viability of GAP 1 and inviting input from the pilots. If proven at trial, these facts would allow a reasonable jury to find that the MEC had engaged in an elaborate show of soliciting expert advice and pilot opinion on the fairness of the distribution of the proceeds of the notes when it had already decided to eliminate an option that, ALPA concedes, would have placed all but two of the MEC members in a financially worse position. Under these circumstances, the Court cannot conclude that no reasonable jury could find that ALPA breached its duty of fair representation.

2.      **United's bankruptcy plan**

ALPA and United also contend that they cannot be held liable in this action

based on an exculpation clause contained in United's plan of reorganization.  In

January 2006, a bankruptcy court judge confirmed that plan.  United's plan of

reorganization included ALPA as an "exculpated party" and provided that exculpated

parties could not be held liable for "exculpated claims," defined as "[a]ny Claim related

to any act or omission in connection with the Debtors' restructuring, . . . or the property

to be distributed pursuant to the Plan."  United's Local Rule 56.1 Statement Ex. H at 14-

15.  A subsection of Article X of the plan, dealing with the effect of plan confirmation,

provides that "no Exculpated Party shall have or incur, and each Exculpated Party is

hereby released and exculpated from any Exculpated Claim, except for gross

negligence or willful misconduct . . . ."  *Id.* at 121.

In a previous ruling with respect to the claims in the related *Hudson* case, the

Court concluded that "[t]he words 'intentional' and 'willful' are synonyms, for all practical

purposes."  *Mansfield v. Air Line Pilots Ass'n, Int'l*, 06 C 6869, 2006 WL 2048664, at *3

(N.D. Ill. July 9, 2007 (citing *Webster's Third New International Dictionary* 2617 (1993)).

Similarly, "bad faith," defined by Black's Law Dictionary as "dishonesty of belief or

purpose," would come within the exception to the exculpation clause.  *Black's Law*

*Dictionary* 134 (7th ed. 1999).  As noted above, plaintiffs have presented evidence from

which a reasonable jury could conclude that ALPA, through the MEC, acted in bad faith

or with discriminatory intent.  Such conduct, if proven, would fall outside of the

exculpation clause of United's plan.  Thus ALPA and United are not entitled to summary

judgment on this basis.

### 3.    United's motion and role in this case

Finally, in its separate motion for summary judgment, United notes that the only claim raised in plaintiffs' complaint "is for breach of the duty of fair representation against ALPA."  United's Mem. in Support of Mot. for Summ. J. at 2.  Based on this fact, United contends it is entitled to summary judgment "[t]o the extent any Plaintiff is raising or could raise any claim against United."  *Id.*  There is no viable basis for this request. United intervened in this case, in part, to protect itself against any derivative liability it might incur in the event ALPA is found to have breached its duty of fair representation. Plaintiffs, however, have not attempted to state any claim against United, and there is no live dispute between plaintiffs and United before the Court.  Under these circumstances, it would be inappropriate for the Court to declare that none of the plaintiffs, either individually or as a class, have any sort of claim against United.  *E.g.*, *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) (noting the well established rule that courts may not "render advisory opinions"); *Civix-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 3d 869, 881 (N.D. Ill. 2005) (noting that parties are not entitled to summary judgment on unasserted claims).

United also intervened in this case to protect "a clear and undeniable interest in the finality, stability and reliability of its [confirmed bankruptcy plan], including the exculpation of certain claims against third parts . . . such as ALPA."  United's Mem. in Support of Mot. To Intervene at 2.  As noted above, the Court has determined that the exculpation provisions of United's bankruptcy plan does not bar the current suit, though

the Court has made no ruling that would in any way undermine that plan.  That

conclusion, combined with the fact that plaintiffs have not raised any claims against

United, raises two questions:  whether United still has a sufficient interest to remain as

an intervening party, and if it remains an intervenor, what its role will be at trial.  The

parties should be prepared to address this issue significantly in advance of trial.

### Conclusion

For the foregoing reasons, the Court denies ALPA's and United's motions for

summary judgment [# 233, 237].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 29, 2009