IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. MANSFIELD, JR., MICHAEL W. BALLARD, JERRY H. GALLUD, MICHAEL GLAWE, DENNIS HOLMAN, RICHARD E. MILLER, JR., and PAUL W. WHITEFORD, JR., individually and on behalf of all others similarly situated,  ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | No. 06 C 6869 |
| AIR LINE PILOTS ASSOCIATION INTERNATIONAL, ) ) ) | |
| Defendant. ) ) | |
| UNITED AIRLINES, INC., ) ) | |
| Intervenor. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are pilots currently or formerly employed by United Airlines, Inc. (United) who contend, on behalf of themselves and a certified class, that their union, the Air Line Pilots Association International (ALPA), breached its duty of fair representation under the Railway Labor Act, 45 U.S.C. § 152 (RLA). ALPA has moved to decertify the class. For the reasons set forth below, the Court denies ALPA's motion. The Court also directs the parties to submit for Court approval new proposed notices to send to class members consistent with section two of the following discussion.

## Background [1]

ALPA is a labor union subject to the provisions of the RLA that functions as the bargaining representative for pilots employed by United. The decisions challenged in this lawsuit were made by ALPA's United Airlines Master Executive Council (MEC). Beginning in 2001, United encountered financial difficulties that ultimately resulted in its being reorganized in bankruptcy. As part of that bankruptcy, United terminated aspects of its pilots' pension plan, with ALPA's consent. In return, the pilots received the proceeds of $550 million in convertible notes from United.

ALPA, through the MEC, was tasked with determining a method for dividing the note proceeds among the pilots. The MEC eventually selected a method referred to by the parties as GAP 2. GAP 2 divided the note proceeds based on each pilot's lost accrued benefits and projected lost future benefits. The MEC also considered, but ultimately rejected, another methodology called GAP 1, which considered only benefits that had already been earned; in other words, it did not account for lost future benefits. Plaintiffs contend that ALPA breached its duty of fair representation by adopting the GAP 2 methodology.

In July 2007, the Court certified "a class of United pilots active as of January 1, 2005 who would have received more from the allocation of the note proceeds under the GAP 1 methodology than under the GAP 2 methodology used by ALPA." *Mansfield I*,

---

[1] The Court presumes general familiarity with the factual background set forth in its earlier opinions in this matter. *See Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06 C 6869, 2007 WL 2048664 (N.D. Ill. July 9, 2007) (granting plaintiffs' motion for class certification) ("*Mansfield I*"); *See Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06 C 6869, 2009 WL 2386281 (N.D. Ill. July 29, 2009) (denying ALPA's motion for summary judgment) ("*Mansfield II*").

2007 WL 2048664, at *7.  The Court concluded that the requirements of Rule 23(a) were satisfied and certified the class pursuant to Rules 23(b)(1) and 23(b)(3).  *Id.*

In February 2009, following extensive and protracted discovery, ALPA learned that plaintiffs intend to pursue alternative theories at trial.  Though it appears plaintiffs will continue to argue primarily in favor of GAP 1, they also intend to present the jury with three other alternatives, which the parties refer to as GAP 3, modified GAP 2 contract length, and modified GAP 2 age 60 projection.  ALPA moved to bar plaintiffs from presenting alternatives to GAP 1.  The Court denied that motion but noted a potential problem with plaintiffs' plan to offer multiple theories of liability and damages.[2]  Specifically, some class members fare better under GAP 1 than under the other theories, under which some members might receive nothing; in addition, some class members would fare better under one or more of the alternate theories, as opposed to GAP 1, the main theory plaintiffs intend to pursue at trial.  This arguably presents a risk of an intra-class conflict and a potential conflict of interest for class counsel.  The parties have also learned, based on refined analysis stemming from information obtained in discovery, that some pilots originally believed to be class members (and who received notice of the class action in 2007) are actually outside the class and that some pilots initially believed to be outside the class are in fact members.

To deal with these issues, the Court entered an order on May 14, 2009 directing plaintiffs' counsel to send new notices to three groups of pilots:  (1) original class

---

[2] The parties appear to agree that the issues of liability and damages are intertwined.  The Court does not necessarily agree but makes no finding on the issue at this time, because it is unnecessary to do so.

3

members who would not benefit from one of plaintiffs' damage theories; (2) pilots newly identified as being part of the certified class; and (3) pilots originally identified as part of the class but now identified as not meeting the class definition. ALPA subsequently filed a motion to decertify the class. The Court deferred sending the new class notices until it had ruled on the motion to decertify. The Court then deferred ruling on the motion to decertify until after consideration of ALPA's and United's summary judgment motions. Having denied the latter motions, the Court now returns to the motion to decertify and to the issue of sending out a new class notice.

## Discussion

**1.   Motion to decertify**

ALPA contends that the plaintiff class should be decertified due to intra-class conflicts relating to the alternate theories proffered by plaintiffs. This contention implicates the requirements of Rule 23(a)(4). According to ALPA, the class representatives, who would fare best under GAP 1, cannot adequately represent all class members, some of whom would be better off if a jury adopted one of the alternative damage theories.

ALPA correctly notes that "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Retired Chicago Police Ass'n. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). That said, the fact that some individual plaintiffs would fare better under alternative theories and that some class members might receive no recovery under one of those alternatives does not render their claims "antagonistic or conflicting." As plaintiffs point out, the starting point and the

4

common issue of overwhelming importance for every class member is plaintiffs' contention that ALPA's adoption of the GAP 2 methodology breached the duty of fair representation.  That contention by plaintiffs unites them, no matter which theory (GAP 1 or an alternative) benefits the each individual class member the most.  *See Bertulli v. Indep. Ass'n of Continental Pilots*, 242 F.3d 290, 297-98 & n.33 (5th Cir. 2001) (concluding that class representatives' interests were aligned with entire class of pilots where all class members suffered loss of seniority due to union's actions, even though individual harm as a result of the loss of seniority might vary).  The fact that the class was defined to include persons who would receive more under plaintiffs' primary theory of recovery, GAP 1, than under GAP 2, minimizes any intra-class conflict or antagonism, which is confined to the issue of plaintiffs' alternative theories.  Given the way the class is defined, every class member will benefit if plaintiffs succeed on their primary theory.

Though all class members have an interest in presenting this case in a manner that would lead a jury to conclude that ALPA's selection of GAP 2 violated the RLA, some differences exist among them with respect to the most desirable alternative theory to GAP 2.  Rule 23, however, provides a mechanism by which the Court can ensure adequate representation of all class members without decertifying the class.  Rule 23(d) permits the Court to require that notice be sent "to protect class members."  Fed. R. Civ. P. 23(d)(1)(B).  In cases certified under Rule 23(b)(3), as this one is, class members must also receive notice providing them an opportunity to opt out of the class.  Fed. R. Civ. P. 23(c)(2)(B)(v).  Such notice, when utilized, provides "adequate protection from

any potentially antagonistic interest between class members." *Williams v. Burlington N., Inc.*, 832 F.3d 100, 104 (7th Cir. 1987) (noting that such measures can address "the prime concern . . . [of] the adequacy of representation"); *see also Bertulli*, 242 F.3d at 298 (noting availability of opt out to cure objections of "dissatisfied" class members). As detailed below, plaintiffs will be required to send class members a modified version of the notice approved in May 2009. That notice will explain the alternative theories proposed by plaintiffs and provide class members with a new opportunity to opt out of the class.

For these reasons, the Court concludes that the class representatives are capable of adequately protecting the interests of the entire class.

ALPA also contends that plaintiffs' counsel cannot adequately represent the class, because "by advocating three alternative theories that necessarily contradict the sworn testimony of their client, [counsel] now face an irreconcilable conflict of their own." ALPA's Br. in Support of its Mot. to Decertify at 13. The Court already rejected this argument when it denied ALPA's motion to limit plaintiffs to GAP 1. *See* Dkt. No. 204, May 3, 2009 Order at 2 ("ALPA cites no legal authority, and the Court is aware of none, to support the proposition that a plaintiff can pursue a liability or damages theory only if he ascribes to it in his deposition testimony. Legal theories are typically crafted by lawyers, not clients"). In any event, ALPA's contention that the presentation of alternative theories renders counsel's representation inadequate fails for the same reasons as its argument with respect to an intra-class conflict. Plaintiffs' counsel will seek to undermine ALPA's selection of GAP 2 in an effort to maximize the recovery for

the class as a whole, and class members concerned that this will cause counsel to overlook their individual interests will have the opportunity to opt out after receiving a new notice explaining the current state of affairs.

Finally, ALPA contends that decertification is required because plaintiffs no longer meet the requirements of Rules 23(b)(1) or 23(b)(3). Specifically, ALPA argues Rule 23(b)(1) is not satisfied because pilots who would fare better under one of the alternative theories to GAP 1 "would have an interest in whether the Court awards relief under one of Plaintiffs' alternative theories, but they are stuck on the sidelines without even a right to notice." ALPA's Br. in Support of its Mot. to Decertify at 14. The Court disagrees. Class members who would fare better under an alternative theory will receive, pursuant to court order, notice explaining the situation and providing them the opportunity to opt out. Additionally, the Court finds unpersuasive ALPA's argument that common issues no longer predominate. The fact that the class will present alternative but closely related theories in support of their single claim that the adoption of GAP 2 violated the duty of fair representation does not alter the Court's prior determination pursuant to Rule 23(b)(3).

**2.    New class notices**

As detailed above, prior to ALPA's motion to decertify, the Court approved notices to send to three groups of pilots. Those notices need to be modified consistent with this decision and to reflect the passage of time. Additionally, due to the issues raised by the motion to decertify, a fourth group of pilots requires notice – class members who would fare better under one of the alternate theories than under GAP 1.

7

In that regard, the notice must explain that the class representatives and their counsel intend to argue primarily in favor of GAP 1, which they have determined provides the class as a whole with the greatest chance for a favorable verdict and the largest total recovery, but that the individual class member might receive a greater damage award if the jury found in plaintiffs favor but selected an alternate theory to GAP 1, depending on which theory it selected.  This will enable class members who would fare better under one of the alternates to GAP 1 to pursue the option that best suits them, including the option to opt out of the plaintiff class.

The Court expects the parties to attempt to agree on the form of the revised class notices, using those approved in May 2009 as a template.  The parties are directed to submit to the Court, no later than 4:00 p.m. on Monday, August 24, 2009, proposed revised notices.  If the parties are unable to agree on the language of the revised notices, both sides must submit their proposed notices at that time.  The case is set for a status hearing on August 25, 2009.  Plaintiffs' counsel will be expected to be prepared to mail the notices expeditiously once they are approved so that class members receive notice sufficiently in advance of trial.[3]

## Conclusion

For the foregoing reasons, the Court denies ALPA's motion to decertify the *Mansfield* class [# 209].  As described above, the parties shall submit to the Court, by 4:00 p.m. on August 24, 2009, revised proposed notices to send to class members

---

[3] The Court recognizes that the case is set for a settlement conference with Magistrate Judge Ashman on August 31.  Due to the impending trial date, however, the Court cannot and will not delay sending the notices contemplated by this decision.

8

consistent with this opinion and order. Those notices should be filed electronically and sent in Word or WordPerfect format to Judge Kennelly's proposed order e-mail address. This matter is set for a status hearing on August 25, 2009 at 9:30 a.m.

                                                  _____
                                                     MATTHEW F. KENNELLY
                                                    United States District Judge

Date:  August 20, 2009